UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------
AMERICAN EMPIRE SURPLUS LINES
INSURANCE COMPANY,

                        Plaintiff,

      -against-

DMTB AMG INC., PAL AMG INC., MTB
CONTRACTING INC., MTB METAL
FABRICATORS INC., AND PAL CONTRACTING
INC.,

                        Defendants.
------------------------------------------------------------

**MEMORANDUM & ORDER**
20-CV-3929 (NGG) (RER)

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before this court is Plaintiff's motion for summary judgment, filed on August 25, 2022. (Mot. for Sum. J. ("Mot.") (Dkt. 56).) Plaintiff seeks declaratory judgment on a breach of contract claim for unpaid insurance premiums. Defendants counterclaim for breach of contract by Plaintiff.

I. BACKGROUND

    A. Factual History

The following facts are drawn from Plaintiff's Statement of Material Facts pursuant to Rule 56.1 of the Local Civil Rules.[1] (Pl.'s

---

[1] Defendants did not submit a Local Rule 56.1 Statement of Material Facts in opposition to Plaintiff's Statement of Material Facts. Where a defendant fails to do so, the district court may accept the moving party's assertions as true. *See Millus v. D'Angelo*, 224 F.3d 137, 138 (2d Cir. 2000); *see also Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998) (accepting as true defendant's uncontested assertions in reversing denial of summary judgment). That said, a District Court has "broad discretion to determine whether to overlook a party's failure to comply with local court rules" and though the court "is not required to consider what the parties fail to point

56.1 St. (Dkt. 59.).) Plaintiff American Empire Surplus Lines Insurance Company ("American Empire") issued two Commercial General Liability insurance policies to Defendants MTB AMG Inc., PAL AMG Inc., MTB Contracting Inc., MTB Metal Fabricators Inc., and PAL Contracting Inc. (collectively, the "Defendants"): one for the period of April 1, 2018 to April 1, 2019 (the "2018 Policy"), and the other for the period of April 1, 2019 to April 1, 2020 (the "2019 Policy" and collectively, the "Policies").[2] (*See* Pl.'s 56.1 St. ¶ 1.; *see also* Ex. 1 to Myers Decl. (the 2018 Policy) (Dkt. 58-1); Ex. 2 to Myers Aff. (the 2019 Policy) (Dkt. 58-2).) The premiums charged under these Policies were to be computed as a percentage of the Defendants' gross receipts during the respective policy periods. (Pl.'s 56.1 St. ¶ 2.) Plaintiff assigned advance premiums to the Policies based upon an initial estimate of Defendants' gross receipts for those periods. (*Id.* ¶ 3.) These estimates were subject to adjustment if audits by Plaintiff revealed that the gross receipts exceeded those estimates, as provided by the Policies' terms. (*Id.* ¶¶ 3-7.)

At the time of application for the 2018 Policy, Plaintiff assigned an advance premium of $268,000, based on a premium rate of $178.667 per $1,000 of gross receipts and on Defendants' own projected estimate of $1.5 million for their gross receipts in the upcoming 2018 policy year. (*Id.* ¶ 8.) Prior to the audit for the 2018 Policy, Plaintiff acceded to a "split rate" requested by Defendants, who felt their premium should reflect that their business involves both window fabrication and window installation, each having different risk levels. (*Id.* ¶ 9.) Plaintiff agreed to this with the "explicit understanding" that Defendants would

---

out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of its parties has failed to file such a statement." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001).

[2] The court assumes the 2018 Policy ended March 31, 2019 and the 2019 Policy began April 1, 2019.

keep records of the gross receipts and deposits separate for fabrication and installation in order to determine the premium. (*Id.*)

On Plaintiff's behalf, Matson Driscoll & Damico LLP performed an audit of Defendants' financial records after the 2018 Policy period. (*Id.* ¶ 10.) The audit found that Defendants had total gross receipts in the sum of $11,172,231.22 for the 2018 Policy period: $8,311,511.48 was attributed to fabrication work, charged at the rate of $11.00 per $1,000 of gross receipts; and $2,860,719.74 was attributed to installation work, charged at the rate of $178.667 per $1,000 of gross receipts. (*Id.* ¶ 11.) Based on these findings, Plaintiff determined that Defendants owed an additional $334,543 for the 2018 Policy premium. (*Id.*)

For the 2019 Policy application, Plaintiff assigned an advance premium of $295,428, based on Defendants' estimated gross receipts and the premium rate of $196.952 per $1,000. (*Id.* ¶ 12.) Plaintiff then made an adjustment to the advance premium charged for the 2019 Policy, as it was known that Defendants' actual gross receipts would be "well in excess" of their initial $1.5 million policy period estimate. (*Id.* ¶ 13.) Based on discussions with Defendants' insurance broker, an endorsement was issued that provided for an additional premium of $149,464 to be added to the 2019 Policy's advance premium. (*Id.*) Plaintiff made a demand for Defendants' payment of the additional premium owed under the 2018 Policy, which to date has not been paid. (*Id.* ¶ 14.)

Defendants, in their response to interrogatories, stated that they do not dispute the $334,543 amount of additional premium owed for the 2018 Policy. (*Id.* ¶ 17; *see also id.* ¶ 11; Ex. D. to O'Connor Decl. ("Interrogatories Response") (Dkt. 57-4).) Nor have Defendants challenged the interim agreement for the additional advance premium of $149,464 under the 2019 Policy, which Defendants agreed to through their insurance broker. (Pl.'s 56.1 St. ¶ 18; *see also id.* ¶¶ 13-14.)

3

When it came time for Plaintiff to collect whatever additional premium was owed under the 2019 Policy, an audit was ordered to establish the amount owed. (*See generally* Ex. E to O'Connor Decl. (the "Zimmerer Depo.") (Dkt. 57-5).) Plaintiff's auditor was at first unable to conduct the needed analyses due to a lack of supporting documentation provided. (*Id.*) Eventually, a 2019 Policy Revised Audit was conducted. (Pl.'s 56.1 St. ¶ 19.)After a series of emails exchanged between Plaintiff's auditor and Defendants' representative regarding the details of the 2019 Policy Revised Audit calculation and results,[3] Defendants' counsel advised that Defendants agreed to the 2019 Policy Revised Audit on February 10, 2022, showing an additional $460,296 owed. (*Id.* ¶ 19.)[4]

Plaintiff alleges Defendants currently owe a total sum of $944,303 due to Plaintiff for additional premium under the Policies, no portion of which has yet been paid. (*Id.* at ¶ 20.) Plaintiff also asserts a total amount of $77,163 of incurred attorney's fees

---

[3] Defendants asserted that prior to the 2019 Policy Revised Audit, Plaintiff was seeking to have 100% of Defendants' insured gross receipts during the 2019 Policy period treated as "installation" work for the purposes of premium calculation. (*See* Interrogatories Response ¶ 5.) Throughout the course of litigation, including after a lengthy deposition throughout which Plaintiff's auditor explained to Defendants' counsel what information she would need to figure out an estimated division between receipts stemming from "installation" work vs. "fabrication" work, the 2019 Policy Revised Audit referred to in Plaintiff's 56.1 Statement was conducted, and Plaintiff arrived at the outstanding premium amounts currently sought. (*See generally* Zimmerer Depo; Ex. 7 to Myers Decl. (the "2019 Policy Revised Audit") (Dkt. 58-7).)

[4] Plaintiffs consider this email from counsel the final word from Defendants on whether the audit was right. The Defendants, in their Answer and Opposition to Fees, continue to dispute the audit's conclusions despite this concession. In any event, the dispute regarding whether Defendants conceded the audit's propriety is immaterial, because the amount of damages owed under the Policies is undisputed and supported by the record, as discussed *infra*.

4

and expenses associated with efforts to obtain this payment from Defendants. (*Id.* ¶ 21.)

### B. Procedural History

Plaintiff filed an initial complaint on August 25, 2022. (*See* Compl. (Dkt. 1).) Plaintiff filed an amended complaint on August 10, 2021 (*See* Second Am. Compl. (Dkt. 41).) After significant discovery had been conducted and the 2019 Policy Revised Audit had been completed, Plaintiff filed a Third Amended Complaint on February 22, 2022. (*See* Third Am. Compl. ("TAC") (Dkt. 46).) Defendants filed their Answer to the TAC and Counterclaims on March 28, 2022. (*See* Ans. (Dkt. 51) ("Answer").) Plaintiff answered Defendants' Counterclaims on March 29, 2022. (*See* Pl.'s Ctr-Ans. (Dkt 52) ("Counter-Answer").) The TAC seeks, *inter alia*, judgment in the sum of $944,303, plus interest, for the additional premium due and owed by Defendants on the Policies, calculated following the premium audits of Defendants' gross receipts; incurred attorney's fees; and a declaration of no coverage if Defendants' fail to satisfy the judgment. (*See* TAC, Prayer for Judgment; Pl.'s 56.1 St. ¶ 16.) Defendants' Counterclaims allege that they satisfied their obligations by timely paying the Policies' premiums (Counter-Answer ¶ 73); and that Plaintiff breached their agreement by failing to comply with the Policies' terms in now seeking declaratory judgment rescinding the Policies. (*Id.* ¶¶ 74-76.) Plaintiff now moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

## II. STANDARD OF REVIEW

The court's role on a motion for summary judgment "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Lionel v. Target Corp.*, 44 F. Supp. 3d 315, 318 (E.D.N.Y. 2014) (quoting *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006)). Summary judgment is appropriate when the

movant shows "that there is no genuine dispute as to any material fact, and and the movant is entitled to judgment as a matter of law." *Am. Empire Surplus Lines Ins. Co. v. Certain Underwriters at Lloyd's London*, No. 16-CV-5664 (AMD) (JO), 2018 WL 10456838, at *4 (E.D.N.Y. July 23, 2018) (quoting Fed. R. Civ. P. 56(a)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue of fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue of fact cannot be established by "[c]onclusory allegations, conjecture, and speculation." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

If the moving party meets its burden in showing there is no genuine dispute as to a material fact, the burden shifts to the non-moving party to establish, based on evidence in the record, the existence of each element constituting its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("The moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."). "[T]he party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial." *Certain Underwriters at Lloyd's London*, 2018 WL 10456838, at *4. If the non-movant is unable to establish each element is at least reasonably disputed based on the evidentiary record, the motion should be granted.

### III. DISCUSSION

#### A. Plaintiff's Motion for Summary Judgment

Plaintiff argues that no issues of material fact exist regarding any of the elements for a breach of contract claim under New York law. (*Mot.* at 11.) The court agrees.

6

1. Legal Framework

In New York, insurance policies are treated as contracts and are thus subject to the general principles of contract interpretation. *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 98 (2d Cir. 2012). Under New York law, "the elements of a breach of contract claim are 1) the existence of a contract, 2) performance by the party seeking recovery, 3) breach by the other party, and 4) damages suffered as a result of the breach." *Mersen USA EP Corp. v. TDK Elecs. Inc.*, 594 F. Supp. 3d 570, 584 (S.D.N.Y. 2022) (citing *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)).

In an unpaid insurance premium case, the existence of a contract can be proven by submission of an insurance policy. *Am. Empire Surplus Lines Ins. Co. v. B & B Iron Works Corp.*, 18-CV-6384 (WFK) (ST), 2021 WL 4439760, at *3 (E.D.N.Y Sept. 28, 2021). Further, an audit statement together with an affidavit from a representative of the insurance company as to the amount owed can establish performance by the party seeking recovery, breach by the non-moving party, and damages suffered as a result of the breach. *Id.* Taken together, these documents can "provide sufficient factual support for a prima facie unpaid premium case." *Id.* (citing *Evanston Ins. Co. v. Po Wing Hong Food Mkt., Inc.*, 800 N.Y.S.2d 396, 396 (1st Dep't 2005)).

2. Application

To make its prima facie case that Defendant breached the contract by failing to pay the insurance premium owed, Plaintiff provided (1) insurance policies and endorsements for the period of April 1, 2018 through April 1, 2019 and the period of April 1, 2019 through April 1, 2020, (Exs. 1, 2 to Myers Decl. (Dkts. 58-1, 58-2)); (2) audit statements and endorsements for those same periods, (Exs. 4-8 to Myers Decl. (Dkts. 58-4, 58-5, 58-6, 58-7, 58-8)); and (3) an affidavit from a representative of Plaintiff, the

insurance company, as to the amount owed. (Myers Decl.) Plaintiff has also provided supporting documentation for the calculated amount owed according to the Myers Declaration. (*See* Zimmerer Depo.; 2019 Policy Revised Audit.)

The insurance policies and endorsements submitted are sufficient to make out a prima facie case that valid contracts existed for both policy periods. Further, the record provides no reason to believe that, prior to Defendants' breach, Plaintiff failed to properly perform by insuring Defendants under the terms of the contract.

The amount owed is at the heart of the instant litigation. Although Defendants did not submit a 56.1 Statement formally opposing the amount owed, the court opted to undertake a careful review of the audit statements, audit endorsements, and affidavits provided, in order to ensure there is sufficient supportive documentation for the premium amount claimed. Based on this review, Plaintiff has successfully made a prima facie case as to its calculation of the amount of premium payment owed for 2018 and 2019. Plaintiff has provided a detailed explanation for how it reached the $944,303.00 unpaid premium number set forth in the TAC. (*See generally* Zimmerer Depo.; 2019 Policy Revised Audit.)[5]

---

[5] Plaintiff appears to have reached the $944,303 unpaid premium number in a circuitous but logical way, made necessary by the type of data provided to Plaintiff's auditor. Both parties agree that the amount of unpaid premium on the 2018 Policy is $334,543. (Interrogatories Response ¶ 4.) Under the terms of the 2019 Policy, Plaintiff insured Defendants at a significantly higher premium rate for "installation" work than for "fabrication" work, due to the differing levels of risk in the two work activities. (*See generally* 2019 Policy.) The premiums were to be calculated by applying the "fabrication" premium rates to "fabrication" gross receipts and the "installation" premium rates to "installation" gross receipts respectively. (*Id.*) Defendants did not originally provide sufficient documentation for Plaintiff's auditors to determine which gross receipts from the 2019

In their Opposition to Plaintiff's Motion for Fees, Defendants assert that they "do not concede the $944,303 is due (and believe it to be much less)." (Opp. (Dkt. 61) at 3 (the "Opposition").)[6] However, conclusory statements cannot, on their own, raise triable issues of fact and Defendants thus fail to adequately rebut any of the elements of Plaintiff's prima facie case. *See Ridinger v. Dow Jones & Co.*, 651 F.3d 309, 317 (2d Cir. 2011). By their own admission, Defendants are "not disputing the additional premiums owed (in order to avoid additional litigation costs)." *Id.* By electing not to dispute these additional premiums owed, Defendants

---

policy period were "installation" gross receipts versus "fabrication" gross receipts. (Zimmerer Depo. at 62) Well after litigation had commenced, Defendants provided additional documentation to assist Plaintiff's auditor, in the form of detailed project invoices relating to "fabrication" work. (2019 Policy Revised Audit at 4-5 ("Schedule 1B").) Although this was not the categorized gross receipt data the auditor would typically have worked from, this documentation proved useful. The auditor first attempted to ascertain which project invoices could be categorized as "fabrication" based on what Defendants had invoiced clients for during each project. (Schedule 1B.) She seems to have then allocated those invoices to the estimated "fabrication" gross receipts total, apparently making the assumption that all said invoices actually resulted in revenue later collected. (*Id.*) Finally, she appears to have then calculated estimated "installation" gross receipts by subtracting the estimated "fabrication" gross receipts from the total gross receipts. (2019 Policy Revised Audit at 1-3.) Plaintiff then applied the corresponding premium rates to the estimated gross receipts for each category during the 2019 Policy period and determined the total additional premium amount was $460,296. (Mot. at 6.) That 2019 additional premium amount owed was combined with the amount of advance premium still owed for the 2019 Policy ($149,464) and the amount of unpaid premium owed on the 2018 Policy ($334,543), for a total premium amount owed of $944,303.

[6] Although Defendants' are alleged to have accepted this breakdown as accurate in an email between counsel on February 10, 2022, (Ex. J to Myers Decl. ("Feb. 10, 2022 Email from Ryan Lawler to Maureen O'Connor") at 1 (Dkt. 58-7),) statements such as this one arguably contradict that allegation.

have failed to raise an issue of material fact to counter Plaintiff's prima facie case.

Therefore, Plaintiff's Motion for Summary Judgment is GRANTED.

### B. Plaintiffs' Motion for Fees and Expenses

1. Legal Framework

a. *Attorneys' Fees*

"In the American system of justice, 'the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.'" *Fresno Cnty. Emps.' Ret. Assoc. v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 67 (2d Cir. 2019) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)); *see also Am. Empire Surplus Lines Ins. Co v. Disano Demolition Co.*, No. 18-CV-5047 (NGG) (CLP), 2021 WL 21722, at *4 (E.D.N.Y. Jan. 4, 2021). "[W]ell-known exceptions include instances in which Congress has provided for attorneys' fees by statute and situations in which a litigant or a lawyer recovers a common fund for the benefit of persons other than himself or his client." *Id.* Courts may also award attorneys' fees to a prevailing party "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline*, 421 U.S. at 258-59. "An award of attorneys' fees under the bad faith exception is punitive and is to be granted only in exceptional cases and for dominating reasons of justice," such as "when the losing party's claims were entirely without color and made for reasons of harassment or delay or for other improper purpose." *David v. Sullivan*, 777 F. Supp. 212, 218 (E.D.N.Y. 1991). Generally, "[t]he awarding of attorneys' fees in diversity cases ... is governed by state law." *Grand Union Co. v. Cord Meyer Dev. Co.*, 761 F.2d 141, 147 (2d Cir. 1985). "In New York, attorney fees are largely denied in the absence of an agreement between the parties or a statute authorizing such an award." *Petrello v. White*, No. 01-cv-3082 (DRH)

(AKT), 2012 WL 2803759, at *3 (E.D.N.Y. July 10, 2012) (citing *Buffalo v. J.W. Clement Co.*, 321 N.Y.2d 241, 262-63 (1971)).

### b. Interest

Most awards of interest are "within the discretion of the district court." *Matsumura v. Benihana Nat. Corp.*, 465 F. App'x 23, 30 (2d Cir. 2012) (Summary Order) (citing *New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599, 602–03 (2d Cir. 2003)). However, "New York law requires a district court to grant prejudgment interest when a party is entitled to such interest as a matter of right." *Id.* "A prevailing party is entitled to prejudgment interest as a matter of right 'upon a sum awarded because of a *breach of performance of a contract*, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property." *Id.* (quoting N.Y. C.P.L.R. § 5001(a)) (emphasis added). And prejudgment interest is to be "computed from the earliest ascertainable date the cause of action existed," N.Y. C.P.L.R. § 5001(b), at the non-compounded statutory rate of 9% per annum, *id.* § 5004(a).

### 2. Application

### a. Attorneys' Fees

Plaintiff argues that attorneys' fees should be awarded because the Defendants acted in bad faith when they "forced" American Empire to "expand the scope of this litigation and incur additional expense" by asserting defenses in their answer, despite having "no valid defense." (Mot. at 16.) This argument lacks merit. Defendants state clearly in their opposition to the motion for fees that they have chosen not to further pursue their defenses and counterclaims purely because they cannot bear the costs of protracted litigation. (Opp. at 2-3.) Moreover, their assertions, found sporadically throughout the record, that Plaintiff's method for allocating Defendants' gross receipts between installation and fabrication work is flawed– though unable to create a material

issue of fact due to their conclusory nature—indicate that Defendants may have possessed at least one valid defense if they had the resources to assert it. (*See, e.g.,* Interrogatories Response ¶¶ 5, 10; Ex. J to Myers Decl. at 6 (Dkt. 58-10).) ("[J]ust b/c they are not in the Metal Fab GL doesn't mean they are related to installation. They can be general expenses of the business..."). As Defendants observe in their Opposition, it is further possible that the choice to raise potentially meritorious defenses and counterclaims in their Answer played a role in persuading Plaintiff to lower the dollar amount sought between the SAC and the TAC. (Opp. at 3.) Finally, there is neither a New York State statute nor any agreement between the parties contained in the underlying policy that counsels in favor of an award of attorneys' fees. (*See* 2018 Policy & 2019 Policy.)

### b. Interest

Plaintiff also argues that prejudgment interest has been accruing on the outstanding premium owed since the date on which the claim accrued and continues to accrue until the payment has been made. (Mot. at 15.) As this is a breach of contract case, Plaintiff is correct. *Matsumura*, 465 F. App'x at 30. When calculating the amount of interest due, courts in this district have stated that the date at which the final audit endorsement was sent to the insured constitutes the date the claim accrued. *See Disano Demolition*, 2021 WL 21722, at *3. Here, that date was February 16, 2022. (Ex. F to Myers Decl. at 1-2 (Dkt. 57-6).) Thus, this court orders that Plaintiff be awarded interest at the rate of 9% per annum of the damages awarded herein, accruing from February 16, 2022 until the date payment is made, as set forth in C.P.L.R. §§ 5001 and 5004.

### C. Plaintiff's Declaratory Judgment Motion

Plaintiff seeks a declaration that it has no obligation to defend or indemnify Defendants under the 2018 and 2019 Policies in the event that Defendants fail to satisfy the judgment. (Mot. at 1.)

Plaintiff has not, however, provided the court with reason to believe there are any active controversies in which Defendants are seeking indemnification and/or defense from Plaintiff under those policies. A matter is only ripe for declaratory relief when there is "a case of actual controversy." 28 U.S.C. § 2201(a). Furthermore, "[f]ederal courts generally decline to award declaratory relief in indemnification actions, especially before any underlying suit has been filed." *Solow Bldg. Co. v. ATC Assocs., Inc.*, 388 F. Supp. 2d 136, 139 (E.D.N.Y. 2005). Relatedly, there is no duty to "defend against any actions that do not currently exist." *FSP, Inc. v. Societe Generale*, No. 02-CV-4786 (GBD), 2003 WL 124515, at *5 (S.D.N.Y. Jan. 14, 2003). Although declaratory relief from contingent liability may be granted under certain circumstances, courts decide whether a possible controversy is ripe for declaratory relief based on "the practical likelihood that the contingency will occur." *Cognetta v. Bonavita*, 330 F. Supp. 3d 797, 813 (E.D.N.Y. 2018). Here, Plaintiff has offered no evidence that an active controversy over indemnification or defense is likely to emerge. For these reasons, Plaintiff's request for declaratory relief at this time is DENIED.

### D. Defendants' Counterclaims

Finally, the court notes that Defendants raised, as part of their Answer, counterclaims seeking a declaration of compliance with the contract and damages for Plaintiff's own breach of contract by commencing the instant litigation. (Ans. ¶ 66-84.) However, because the court has granted summary judgment on Plaintiff's claim for breach of contract, both of Defendant's counterclaims are now dismissed as moot.

## IV. CONCLUSION

For the aforementioned reasons, Plaintiff's Motion for Summary Judgment is GRANTED. A judgment is to be entered in the amount of $944,303 plus interest accruing at a rate of 9% from

February 16, 2022 until the date payment is made. Plaintiff's Motion for a Declaratory Judgment stating that American Empire has no duty to defend or indemnify the Defendants under policies for which Defendants failed to pay the premium, including the 2018 Policy and the 2019 Policy is DENIED. Plaintiff's motion for attorneys' fees is DENIED. Defendant's counterclaims are DISMISSED AS MOOT.

SO ORDERED.

Dated:   Brooklyn, New York
         February 8, 2023

                                    s/Nicholas G. Garaufis
                                    _____
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge

14